**STATE of Tennessee, Appellee,**

v.

**Donald Wayne STROUTH, Appellant.**

Supreme Court of Tennessee.

June 8, 1981.

Petition to Rehear Denied Aug. 31, 1981.

Larry R. Dillow, Dillow, Minor & Assoc., Kingsport, J. Klyne Lauderback, Bristol, Patrick D. O'Rourke, Southern Prisoners Defense Committee, Jackson, Miss., for appellant.

Robert L. Jolley, Jr., Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen. & Reporter, Nashville, for appellee.

## OPINION

COOPER, Justice.

This case is before us on appeal by Donald Wayne Strouth from a judgment entered in the Criminal Court for Sullivan County, Tennessee. *See* T.C.A. § 39–2406.[1] Specifically, the judgment approved the jury's verdicts (1) finding appellant guilty of robbery by the use of a deadly weapon and fixing his punishment at forty years in the state penitentiary, and (2) finding appellant guilty of murder in the first degree and fixing his punishment at death by electrocution.

Appellant was convicted of killing James Keegan in the course of the robbery of the Budget Shop in Kingsport, Tennessee. On February 16, 1978, Mr. Keegan's body was found on the floor of his place of business. His throat had been cut and there was evidence of a severe blow to his head. Death was due to the throat wound which, according to medical testimony, was inflicted while Mr. Keegan was unconscious from the head injury. Mr. Keegan's pockets were turned inside out, and his billfold and "roll" of money were missing.

Appellant and Jeffrey Stuart Dicks subsequently were arrested and charged with the robbing and killing of Mr. Keegan. The defendants were tried separately[2] to avoid the possibility of a *Bruton*[3] violation inherent in the fact that each of the defendants gave investigating officers statements implicating the other. On trial, appellant was found guilty of murder in the perpetration of a robbery and robbery with a deadly weapon. In the subsequent sentencing hearing on the felony murder conviction, the jury found the following aggravating circumstances:

The murder was especially heinous, atrocious or cruel in that it involved torture and depravity of mind;[4] and

The murder was committed while the defendant was engaged in committing robbery.[5]

The jury also found that "there [were] no mitigating circumstances sufficiently substantial to outweigh the aggravating circumstance or circumstances," and sentenced appellant to death.

The trial judge approved the death sentence on the felony-murder conviction, and also approved the sentence of forty years imposed by the jury on its finding appellant guilty of robbery with a deadly weapon.

Appellant does not question the sufficiency of the convicting evidence as to either offense, but does question rulings by the trial judge on pre-trial motions, voir dire, admission of evidence, conduct of the officer in charge of the jury, and comments by the prosecutor during the course of the trial. Appellant also challenges the constitutionality of the Tennessee Death Penalty

---

1. Although this case was submitted to the court earlier than some of the other reported decisions herein referred to, in the course of regular assignment and release of opinions the decisions in those cases were earlier. In one of the first decisions in which this court approved the imposition of the death penalty under present statutes, *Houston v. State*, 593 S.W.2d 267 (Tenn.1980), cert. denied, 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980), review was sought in the United States Supreme Court. That review was not completed until December, 1980. This court deemed it prudent not to release further opinions approving the imposition of the death penalty pending that review. Subsequently Justice Brock, to whom the record in the present case was initially assigned, concluded that imposition of the death penalty under any circumstances violat-

ed provisions of the Tennessee Constitution. *See* his dissenting opinion in the case of *State v. Dicks*, 615 S.W.2d 126, (Tenn.1981). Thereafter the undersigned was designated to prepare the opinion of the court in the present case.

2. *State v. Dicks*, 615 S.W.2d 126 (Tenn.1981), wherein the first degree murder conviction and death sentence of Jeffrey Stuart Dicks was affirmed.

3. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

4. T.C.A. § 39–2404(i)(5).

5. T.C.A. § 39–2404(i)(7).

Act on several bases, and insists that his conviction of both robbery and felony murder are violative of the Fifth Amendment to the Constitution of the United States and Article 1, Section 10 of the Constitution of the State of Tennessee. We find no merit in any of the charged errors except the latter.

In *Briggs v. State*, 573 S.W.2d 157 (Tenn.1978) this court held that dual convictions of felony-murder and the underlying felony are offensive to the double jeopardy clause of the Fifth Amendment to the Constitution of the United States and of Article 1, Section 10 of the Constitution of the State of Tennessee and that the conviction of the underlying felony can not stand. Accordingly, the conviction of appellant for armed robbery is vacated.

The several bases of appellant's challenge to the constitutionality of the Tennessee Death Penalty Act have been considered in detail and have been rejected by this court in cases decided during the time appellant's case has been on appeal. For example, the contentions now made with respect to the alleged vagueness of the statutes, mandatory imposition of the death penalty, use of hearsay evidence in the sentencing hearing, and that the statute gives the jury "unguided and unrestrained" discretion in imposing the death penalty were considered and rejected in *Houston v. State*, 593 S.W.2d 267 (Tenn.1980), *cert. denied*, 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980). *See also State v. Dicks*, 615 S.W.2d 126 (Tenn. 1981). The contention that the Death Penalty Act is defective in that it does not specifically require notice to the accused of the particular aggravating circumstances upon which the State intends to rely in seeking the death penalty was considered in *State v. Berry*, 592 S.W.2d 553 (Tenn.1980), and in *State v. Houston, supra*, and was rejected. Likewise found to be without merit was the challenge to the efficacy of T.C.A. § 39–2406(c) and Rule 46 (now Rule 12) of the Rules of the Supreme Court of Tennessee to provide for adequate comparative review of sentences imposed on defendants found guilty of murder in the first degree. *See State v. Groseclose, et al.*, 615 S.W.2d 142 (Tenn.1981).

Appellant insists that the jury selection procedure followed by the trial judge, and the statute upon which the procedure was based, operated to systematically exclude women from the venire, thus depriving appellant of the constitutional right to be tried by a jury representative of the community. The record does not bear out appellant's charge. The statute in effect at the time of appellant's trial, T.C.A. § 22–101, granted women the option of serving on the jury or not. The trial judge, being cognizant of the decision in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) voicing disapproval of a blanket exclusion of women from service on the jury, did not follow the statute in selecting the jury venire for appellant's trial, but only excluded jurors "for cause," whether man or woman. Further, the record shows that three of the twelve jurors selected to hear the charges against appellant, and both alternate jurors, were women. This is a fair representation of women on the jury and that is all that is required by the Constitution of the United States. *See State v. Jefferson*, 529 S.W.2d 674 (Tenn.1975).

Appellant also insists the trial judge erred in refusing to order the clerk to prepare and present to appellant a list of prospective jurors, together with information required by Rule 24(g) of the Tennessee Rules of Criminal Procedure, prior to the initiation of appellant's trial. We find no basis in the record for this charge. The names and addresses of prospective jurors were given to appellant several weeks prior to the date of trial. Additional information relative to the jurors, such as occupation, name of spouse, occupation of spouse, and whether a prospective juror had served previously on a criminal court jury, was delivered to appellant as soon as the information could be collected and collated, and the information was delivered prior to the date the trial began. The record then shows that the action taken by the trial judge and the clerk to get information concerning prospective jurors into the hands of appellant

was as expeditious as possible and that appellant was not prejudiced in any way.

Appellant further charges that the jury selected was oriented to conviction and to the imposition of the death penalty, and that the orientation was due to errors committed by the trial judge in conducting the voir dire. Appellant also insists that the trial judge committed error in refusing to continue the case to give appellant the opportunity to present evidence indicating that a jury of persons without conscientious objections to the death penalty is biased in favor of conviction.

In *Smith v. State*, 205 Tenn. 502, 524–25, 327 S.W.2d 308, 318 (1959), *cert. denied*, 361 U.S. 930, 80 S.Ct. 372, 4 L.Ed.2d 354, this court pointed out that:

> A voir dire examination is for the purpose of advising counsel of the juror's qualification, interest, or bias, as a matter of fact, presupposing his statutory competence, that is, age, residency, etc. The subjacent purpose is to enable the exercise of one's peremptory challenges [citations omitted]. In this process, it has been held, and it seems to us fairly so, that proper fields of inquiry include the juror's occupation, habits, acquaintanceships, associations, and other factors, including his experiences, which will indicate his freedom from bias.

■ No restrictions were placed by the trial judge upon appellant's examination of prospective jurors concerning these subjects. The court, however, did refuse to permit appellant to question jurors concerning their understanding of the unanimity necessary to reach a verdict and sentence of death. The trial judge's ruling was in accord with T.C.A. § 39–2404(h), which provides that "[t]he judge shall not instruct the jury, nor shall the attorneys be allowed to comment at any time to the jury, on the effect of the jury's failure to agree on a punishment."

■ The trial judge also prohibited counsel from asking the following question of prospective jurors: "Do you realize that if Mr. Strouth is sentenced to die that he will actually be killed?" We see no prejudicial error in this ruling. Speculation on whether a sentence will be carried out is foreign to the issue of guilt and is not a proper consideration for the jury in determining the sentence to be imposed. *See Farris v. State*, 535 S.W.2d 608, 614 (Tenn. 1976).

■ Appellant further contends the trial judge erred in refusing to allow him "to examine and rehabilitate the voir dire of a prospective juror, Mary J. Penley," who was excused from jury service "for cause." Rule 24(b) of the Tennessee Rules of Criminal Procedure directs the trial judge to excuse a juror from the trial of a case where the examination of the juror reveals grounds for challenge for cause. Commission comments to the rule emphasize that extreme care should be taken in trying to rehabilitate a prospective juror into vocalizing impartiality. During voir dire, Mrs. Penley repeatedly and unequivocally told the trial judge she would automatically vote against the death penalty, whatever the evidence.[6] Her statements left no leeway for rehabilitation, and left the trial judge with no alternative but to disqualify her "for cause."

■ In the remaining assignment of error directed to the voir dire, appellant insists questions asked of prospective jurors were calculated to call attention to appellant's silence should he exercise his right not to testify. This issue was not included in appellant's motion for a new trial and, consequently, is deemed to be waived. *See* Rule 3(e) of the Tennessee Rules of Appellate Procedure. But due to the gravity of this case, we have considered the assignment and found it to be without merit. If the questions asked on voir dire by the district attorney general could be construed

---

6. *See Witherspoon v. Illinois*, 391 U.S. 510, 513–514, 88 S.Ct. 1770, 1772, 20 L.Ed.2d 776 (1968) and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 2960–2961, 57 L.Ed.2d 973 (1978), which allow the trial judge to excuse for cause any juror who expresses an inability to follow the law and instruction of the trial judge on capital punishment.

as a comment on the exercise by appellant of his right to remain silent, the record shows that the trial judge, *sua sponte*, instructed the district attorney general not to pursue that line of questioning and instructed the jurors fully on the rights of appellant. Under these circumstances, we see no prejudice resulting to appellant from questions asked of prospective jurors by the district attorney general.

■ Next, appellant contends that the trial judge erred in failing to grant him a continuance to allow him the opportunity to develop evidence that "a jury made up solely of a 'death qualified jury' would too readily ignore presumptions of innocence and accept the prosecution's version of the facts." A motion for a continuance is addressed to the sound discretion of the trial judge, and his ruling on the motion will not be disturbed in the absence of an abuse of discretion to the prejudice of the defendant. *Moorehead v. State*, 219 Tenn. 271, 274–275, 409 S.W.2d 357, 358–359 (1966); *Woods v. State*, 552 S.W.2d 782, 784 (Tenn.Cr.App. 1977). We see no abuse of discretion on the part of the trial judge, nor prejudice to the defendant resulting from the denial of the motion for a continuance. The continuance was not sought until the trial had been in progress for two and one-half days. Furthermore, the issue that was the basis of the continuance had been decided adversely to appellant in *Spinkellink v. Wainwright*, 578 F.2d 582, (5th Cir. 1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796, (1978).

■ Issue is also taken by appellant to the introduction in evidence during the "guilt-innocence" phase of the trial of "before" and "after" photographs of Mr. Keegan. As pointed out in *State v. Dicks*, 615 S.W.2d 126, (Tenn.1981), where the same photographs were introduced, we find no prejudicial error in the admission of the photographs.

... [I]t would have been better had the "before" picture of Mr. Keegan been excluded since it added little or nothing to the sum total of knowledge of the jury. The other two pictures, however, were relevant to material issues in the trial and were not inflammatory. The picture of Mr. Keegan taken at the scene of the homicide, and which does not show the neck wound, was a necessary predicate to proof that Mr. Keegan was unconscious at the time his throat was cut. The physician, who so testified, did so partly on the photographic evidence showing the position of Mr. Keegan's body and the absence of blood on Mr. Keegan's hand as shown in the photograph, and partly on the description of the wound.

■ Appellant insists the trial judge erred during the sentencing phase of the trial by permitting the State to introduce evidence of appellant's convictions in North Carolina and in the juvenile courts of Maryland. The basis of appellant's insistence is the alleged failure of the state to provide copies of the convictions to appellant as required by Rule 16(a)(1)(B) of the Tennessee Rules of Criminal Procedure. Prior to the sentencing hearing, defense counsel stated and the trial judge held that the State had complied with appellant's motion to discover previous convictions of appellant which would be introduced in evidence. At the sentencing hearing, the defendant asserted that he had not seen the certified copy of the conviction for crime against nature in North Carolina, nor had he been provided with the information from Maryland. It was then brought out that the defendant had been given a copy of defendant's F.B.I. sheet which showed the North Carolina conviction. Further, the record shows that the charging documents from Maryland had just been received by the district attorney general and that they were then available to the defendant. The trial judge allowed the defendant to examine the documents, before proceeding. We think these circumstances demonstrate a substantial compliance with the Discovery required by the Rules of Criminal Procedure and that the trial judge properly admitted appellant's convictions in evidence.

The closing argument of the district attorney general on the sentencing phase of the trial also is attacked by appellant. We

have carefully considered the argument and are of the opinion that the trial judge correctly ruled on objections to the argument and that, in context, the argument was within the bounds of reason.

█ Appellant also charges that jury misconduct occurred during the sentencing phase of the trial. Specifically, appellant charges that the officer in charge of the jury allowed the jury to be confronted by their families while the jury was sequestered. The incident that is the basis of this assignment occurred on September 3, 1978, at the motel where the jurors were staying. The jurors' relatives were bringing clothes to the jurors. A two and one-half year old girl walked to her grandfather, who gave her some money, and then walked back to her grandmother. There was no conversation between these people. The court officers relayed the clean and dirty clothes between the two groups. We agree with the trial judge that these actions do not constitute misconduct and do not contaminate the jury.

The judgment of conviction for robbery with a deadly weapon is reversed and the indictment dismissed. The judgment of conviction for murder in the first degree and the sentence of death imposed pursuant thereto is affirmed. The sentence will be carried out as provided by law on November 3, 1981, unless otherwise stayed or modified by appropriate authority. Costs are taxed against appellant.

I am authorized to state that Justice Brock concurs in the affirmance of conviction but dissents from the imposition of the death penalty for the reasons expressed in his dissent in *State of Tennessee v. Dicks.*

HARBISON, C. J., and FONES, J., concur.

BROCK, J., dissents.