## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### December 8, 2020 Session

## STATE OF TENNESSEE v. LYNN FRANK BRISTOL

**Appeal from the Circuit Court for Coffee County**
**No. 42118F   Vanessa Jackson, Judge**

_____

### No. M2019-00531-CCA-R3-CD

_____

Lynn Frank Bristol, Defendant, was indicted by the Coffee County Grand Jury for "sexual battery and rape of a child" for incidents involving his step-daughter. Nearly three years later, and three days prior to trial, the State moved to amend the indictment to reflect a charge of aggravated sexual battery in Count One and to amend the dates encompassed in the indictment in both Count One and Count Two. Defendant objected to the amendment and asked for a continuance. The trial court allowed the State to amend the indictment and denied a continuance. After a jury trial, Defendant was convicted of aggravated sexual battery in Count One and the lesser-included offense of aggravated sexual battery in Count Two. Defendant was sentenced to ten years for each conviction and the trial court ordered the sentences to run consecutively, for a total effective sentence of twenty years to be served at 100 percent. Defendant appeals, arguing: (1) that the trial court erred in allowing the State to amend the indictment; (2) that the trial court erred by denying a continuance; (3) that the trial court improperly relied on *State v. Qualls*, 482 S.W.3d 1 (Tenn. 2016), for a variety of reasons, including failing to give an enhanced unanimity instruction; (4) that the evidence is insufficient to support the convictions; and (5) that the sentence is excessive. Because we determine that the trial court erred by failing to submit the complete written charge to the jury, in violation of Tennessee Rule of Criminal Procedure 30(c), the judgments of the trial court are reversed and the matter is remanded for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Thomas Parkerson, Murfreesboro, Tennessee, for the appellant, Lynn Frank Bristol.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Craig Northcott, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On June 22, 2015, the Coffee County Grand Jury issued an indictment charging Defendant with "sexual battery & rape of a child"[1] as follows:

COUNT ONE

The Grand Jurors of Coffee County, Tennessee, duly impaneled and sworn upon their oath present that [Defendant] during the year of 2009, in Coffee County, Tennessee, and before the return of this indictment, unlawfully and intentionally did have unlawful sexual contact with [J.M.T.][2], a person less than thirteen (13) years of age at the time of the commission of this offense, in violation of T[ennessee] C[ode] A[nnotated section] 39-13-504,[3] and against the peace and dignity of the State of Tennessee.

COUNT TWO

The Grand Jurors of Coffee County, Tennessee, duly impaneled and sworn upon their oath present that [Defendant] on or about the months of January or February of 2012, in Coffee County, Tennessee, and before the finding of this indictment did engage in unlawful sexual penetration with [J.M.T.], the said victim being more than three (3) years of age but less than thirteen (13) years of age at the time of the commission of this offense, in violation of T[ennessee] C[ode] A[nnotated section] 39-13-522, and against the peace and dignity of the State of Tennessee.

On Monday, May 7, 2018, the morning trial was scheduled to begin, the court heard pre-trial motions, including a motion filed by the State on Friday, May 4, 2018. The substance of the motion was to amend the indictment to include a date range for each

---

[1] This language is taken from the cover page of the indictment.
[2] This Court refers to victims of child sexual abuse by their initials in order to protect their identity.
[3] Tennessee Code Annotated section 39-13-504 defines aggravated sexual battery. Tennessee Code Annotated section 39-13-505 defines sexual battery.

offense and to reflect that Defendant was charged with aggravated sexual battery in Count One rather than sexual battery. Counsel for Defendant objected, asking for a continuance if the trial court granted the motion to amend the indictment. Defendant reasoned that proceeding to trial would be prejudicial to him unless he was able to properly prepare for the amended indictment. The trial court disagreed, allowing the State to amend the indictment. The trial court issued an order amending the indictment to the following:

Count One

The Grand Jurors of Coffee County, Tennessee, duly impaneled and sworn upon their oath present that [Defendant], on a date between January 1, 2009 and February 29, 2012, in Coffee County, Tennessee, and before the return of this indictment, unlawfully and intentionally did have sexual contact with [J.M.T.], a person at less than thirteen (13) years of age at the time of the commission of the offense, in violation of Tennessee Code Annotated [section] 39-13-504, and against the peace and dignity of the State of Tennessee.

Count Two

The Grand Jurors of Coffee County, Tennessee, duly impaneled and sworn upon their oath present that [Defendant], on a date between January 1, 2009 and February 29, 2012, in Coffee County, Tennessee, and before the return of this indictment, did engage in unlawful sexual penetration with [J.M.T.], the said victim being more than three (3) years of age but less than thirteen (13) years of age at the time of the commission of the offense, in violation of Tennessee Code Annotated [section] 39-13-522 and against the peace and dignity of the State of Tennessee.

After the trial court denied the motion to continue the trial, counsel for Defendant and the State discussed the required unanimity jury instruction for the generic evidence that the State claimed was going to be presented at trial. The State discussed that it would be relying on testimony about the "massage" incident for Count One and testimony about the "flashlight" incident for Count Two. Jury selection immediately followed, and opening statements began the next morning, May 8, 2018.

At trial, the victim testified. At the time of trial, she was eighteen years of age. She explained that she has a sister who is four years younger. Her parents, S.T. and C.B.,

divorced when she was around three or four years of age. After the divorce, her parents had "50/50" custody of her and her sister.

In 1999, when the victim was eight or nine years of age, she lived in a duplex in Manchester, Tennessee, with her mother. Her maternal grandmother, M.B., lived in a different unit in the same complex. At some point after the victim's parents divorced, her father also moved into the same complex in order to be close to the girls. His duplex was four or five buildings away from theirs. Her paternal grandmother, L.M., also lived close by. The victim was close with all of the members of her family.

The victim recalled that her mother met Defendant on a dating website. They married in 2008 after "talk[ing] for like six months." The victim talked to Defendant on the phone before she actually met him in person. The victim was "not sure" if she actually met Defendant in person before Defendant and her mother married. For the first few weeks of the marriage, the victim and her sister stayed with their maternal grandmother.

The victim described her relationship with Defendant as "uncomfortable" because he was a "new person" in her life. Then, the victim recalled multiple times that Defendant walked in on her while she was "getting dressed in the mornings" before school. Defendant would also ask to rub her feet. The victim explained that he would "rub [her] feet and then go up on [her] legs and rub more." On other occasions, Defendant would open the door to the bathroom and watch the victim take a shower through the clear shower curtain.

The victim recalled "[n]umerous" massaging incidents but one in particular that occurred when she was twelve years old, "[t]hree or four weeks before [she] got taken to the CAC, the Child Advocacy Center, where [Defendant] was rubbing [her] legs and went up on [her] legs and was all over [her] underwear touching on the side of [her] on the side of [her] private area." During this particular occasion, Defendant "would graze over [her] underwear and then he would go over to the side" for minutes at a time. Defendant's hands were inside her pants but on top of her underwear.

The victim also recalled a "bad dream about [her] cousin, that he had touched [her] or raped [her]." She had the dream when she was ten years old but told Defendant about it instead of her mom to avoid making her mother upset. A few weeks after she told Defendant about the dream, Defendant "came around the corner" with a "flashlight in his hand." Defendant told the victim that her mother "said it was okay if - - that he had to check [her] to see if [she] was pregnant." The victim "sat on the bed and [she] pulled [her] pants down and [her] underwear." Then, she "put [her] knees up and [she] used a pillow to cover [her] face." Defendant "used his fingers to spread [her vaginal] lips out

and used a flashlight to look at [her]." The event lasted three to four minutes and the victim did not remember anything else being said during the incident.

The victim explained that her younger sister told someone at school about the abuse and that her paternal grandmother picked her up at school one day and took her to the Child Advocacy Center. She was interviewed that day, February 7, 2012. The victim acknowledged that during the interview, she told the interviewer that Defendant did not touch her during the flashlight incident because she was "scared" and because it was "hard" and "uncomfortable" to talk about the incidents with a stranger. The victim insisted that the flashlight incident occurred consistently with her trial testimony.

After the interview, a custody battle began. The victim also testified in court regarding custody. She could not remember if she testified at the juvenile court proceeding that Defendant touched her. The victim's father gained full custody of the girls. The victim explained that she was estranged from her mother because her mother took Defendant's side.

The victim eventually saw Janie Berryman, a licensed psychologist, after disclosing the abuse. Dr. Berryman recalled that the victim was able to describe several instances of inappropriate behavior including "grooming behavior" that escalated to "genitalia penetration." Dr. Berryman did not think the victim had been coached and was credible. Dr. Berryman recalled that the victim also disclosed digital penetration during one of her sessions including a description of an incident during which the victim awoke to Defendant placing his fingers inside her vagina.

Jennifer Bellamy, the family advocate at the Coffee County Child Advocacy Center, testified that she interviewed the victim in February of 2012. The victim appeared to be "credible" and consistently described events during the interview but was "embarrassed" to talk about what happened to her.

The victim's mother, C.B., testified on behalf of Defendant that she divorced the victim's father in November of 2005 and married Defendant in 2008. She met Defendant on the website, "hisholyplace.com." C.B., a nurse practitioner, recalled that Defendant massaged her feet on occasion and that her daughters would also ask Defendant to massage their feet. C.B. never saw Defendant doing anything inappropriate with the girls and trusted him to be alone with them. C.B. did not think that it was unreasonable for Defendant to look at the victim's private area with a flashlight "the way he explained it" to her. Defendant had explained to her that the victim was "hysterical" because she thought "something wrong [was] going on down there." C.B. remembered "freak[ing] out" when the victim told her about being raped by her cousin. C.B. did not think that the

memory was a dream, but that it actually happened. However, C.B. acknowledged that she did not report the incident to the police.

C.B. lost custody of the children in 2012. C.B. took Defendant's side after praying for and getting an answer from God that "trump[ed] everything."

Defendant testified that he met C.B. online, that he moved to Tennessee, and that they married. He met the victim and her sister before they married. Defendant explained the flashlight incident. He stated that the victim came to him in a "very emotional and hysterical" state claiming that there was "something . . . wrong down there." Defendant explained that it was the victim's idea for him to look at her vaginal area, so the victim pulled her pants and underwear down before jumping on a dresser. Defendant got a flashlight "for [the victim's] sake" and "held it up" but did not look at her genitals. The victim asked him not to tell C.B. Defendant denied touching or spreading the victim's labia apart with his hands. Defendant also admitted that he massaged the victim's feet but denied that he ever touched her inappropriately. Defendant described the victim, claiming that she was never disciplined and that she would say anything to get what she wanted.

At the conclusion of the proof, the jury found Defendant guilty of aggravated sexual battery in Count One and the lesser-included offense of aggravated sexual battery in Count Two. After a sentencing hearing, during which a victim impact statement was introduced and Defendant testified, the trial court sentenced Defendant to ten years for each count and ordered the sentences to be served consecutively, for a total effective sentence of twenty years.

After the denial of a motion for new trial, Defendant appealed.

*Analysis*

*I. Amendment of the Indictment/Denial of Continuance*

Defendant raises several issues on appeal. In order to facilitate our analysis of the issues, we will address them in a different order than they appear in Defendant's brief to this Court. Defendant argues that the trial court erred by denying the motion for continuance after the State requested an amendment of the indictment right before the trial began. Defendant argues that the amendment was prejudicial and affected his ability to craft a defense. The State disagrees, arguing that the amendment did not amount to a new or different charge or result in any prejudice to Defendant. Thus, the State argues, the trial court did not err in denying a continuance.

## A. Amendment of the Indictment

An amendment to an indictment is permitted pursuant to Rule 7(b) of the Tennessee Rules of Criminal Procedure. While there are several scenarios contemplated by the rule, as pertinent to this case, the rule provides:

> Without the defendant's consent and before jeopardy attaches, the court may permit such an amendment if no additional or different offense is charged and no substantial right of the defendant is prejudiced.

An amendment to the date in an indictment does not charge the defendant with a new or additional crime. *State v. Kennedy*, 10 S.W.3d 280, 284 (Tenn. Crim. App. 1999). "[A] defendant is not charged with a new crime when the date in the indictment is merely corrected in order for the original charge to stand." *Id.*; *see also State v. Richard Dewayne Jordan*, No. E2003-02351-CCA-R3-CD, 2004 WL 1359093, at *2 (Tenn. Crim. App. June 16, 2004) (amending dates in one count charging incest and one count charging aggravated sexual battery to encompass a range of dates between 1992 and 1994 rather than a six-month period between 1994 and 1995), *no perm. app. filed*. A trial court's decision to allow an amendment of an indictment is reviewed for abuse of discretion. *Kennedy*, 10 S.W.3d at 284.

Here, nearly three years after the Grand Jury returned a two-count indictment, the State filed a motion to amend the indictment just three days prior to the scheduled start of trial. The motion asked the trial court to amend Count One of the indictment to reflect Defendant was being indicted for aggravated sexual battery rather than sexual battery, as listed on the cover page of the indictment. The State also sought to amend the indictment to change the date of the offense in Count Two from "on or about January or February of 2012" to "sometime in 2011."

During the hearing, the District Attorney explained that the offense in Count One should have been listed as aggravated sexual battery rather than sexual battery, as listed on the cover page of the indictment.

Additionally, the District Attorney told the trial court, "all I know to say is I'm an idiot. I've got no good excuse other than I just messed up." He proceeded to explain that the dates of the offenses were wrong on the indictment, in a way that was even different from the dates listed in the State's written late-filed motion. He told the trial court that he was talking to defense counsel the morning of trial and "it all just kind of [g]elled." He informed the trial court that the "massage" incident was the basis for the aggravated sexual battery charge in Count One. The District Attorney explained the victim's

testimony would show that this incident occurred about a month prior to the victim's forensic interview in February of 2012.

The District Attorney further explained that the "flashlight" incident was the basis for the rape of a child charge in Count Two. According to the prosecutor, the victim had reported that this event actually occurred prior to the massage incident when the victim was ten years of age, or during the year 2009. Thus, on the morning of trial, the nature and timing of the alleged offenses had just dawned on the District Attorney. The State's position was now that Count Two occurred before Count One.

The District Attorney then proceeded to ask the trial court to amend the indictment to allow a range of dates in the indictment for each offense, from January 1, 2009 through February 29, 2012, instead of the dates listed on the original indictment. The District Attorney again reiterated that at trial it would elect the massage incident as the basis of the aggravated sexual battery charge in Count One and the flashlight incident as the basis for the rape charge in Count Two. Counsel for the State asked the trial court to amend the indictment in accordance with *State v. Qualls*, 482 S.W.3d 1 (Tenn. 2016). He explained that according to *Qualls*,

over defense's objection, that the State is allowed to modify or amend the indictment at any point prior to jeopardy attaching. Obviously[,] jeopardy has not yet attached in this case. So long as there's not substantial impairment of his rights. And I will argue that there is no substantial impairment. As I put in my motion, these whole things have been disclosed. Everyone knows what we've been talking about. Under the state of the law I can put on the proof and I don't have to elect until the end of my proof. So[,] both sides should have been prepared to defend everything in this time period because I can choose whatever I wanted to choose. Now, in fairness to [Defense counsel], as I said before, I don't have any doubt that I told him in trying to reconcile this that I was probably intending to elect different things than I'm intending to elect today. So I want to be completely candid with the Court about that. But in the end all this was known to everyone, the massaging incident, the aggravated sexual battery. Unless the proof comes in different, then [what] I intend on electing was known from the very beginning. The flashlight incident was known from the very beginning. [Defendant] testified about both of these incidents in a deposition in the DCS case as well as at a trial in the DCS case. So this is not new. I just got the dates wrong on the indictment and that admittedly has led to some confusion. So that's my position on the need to amend. I don't believe it affects any substantial right or materially

impacts the ability to defend today. And I ask that we just go ahead and amend it and move forward with the trial.

Counsel for Defendant agreed that the amendment would not result in a new charge but that any amendment to the indictment would impair Defendant's ability to defend against the charges. The trial court ultimately allowed the State to amend the indictment, finding that Defendant was not prejudiced because "there's nothing other than what has already been disclosed in that time period[.]"

The District Attorney's last-minute amendment to the indictment is perplexing and confusing. While he argued that "I intended for all this to come out and then make an election of offenses," he also advanced a notion that the evidence will be consistent with the Tennessee Supreme Court's holding in *Qualls* that the election doctrine does not require the prosecution to identify a single incident in generic evidence cases but is satisfied by providing a jury with a modified unanimity instruction which allows for conviction only if the jury unanimously agrees defendant committed all the acts described by the victim. However, what is baffling about the District Attorney's argument is the victim's testimony in this case was never held out to be generic evidence. He indicated to the trial court that the victim's testimony would allow the State to rely on *Qualls* to make an election at the end of the State's proof because "I can choose whatever I want[ed] to choose." The District Attorney concluded his argument with his belief that the amendment to the indictment did not "affect any substantial right or materially impact the ability to defend today."

Based on our review of the record, we determine that the trial court did not err in granting the motion to amend the indictment. Defendant was not charged with an additional or different offense. The language of the original indictment charged Defendant with a violation of T.C.A. §39-13-504 (aggravated sexual battery) in Count One even if the cover sheet of the indictment listed the offense as sexual battery. A minor discrepancy between the language on the cover sheet and the language contained in a count of the indictment will not render the indictment void. *See Jermain Gwin v. State*, No. W2014-00681-CCA-R3-HC, 2015 WL 12978199, at *2 (Tenn. Crim. App. Jan. 16, 2015), *no perm. app. filed*. Additionally, the substantial rights of Defendant were not impaired. At the time of the amendment, both Defendant and the State had heard the victim's testimony at a DCS hearing and had viewed the victim's forensic interview, during which she disclosed the nature and time frame of the alleged abuse. The amendment was consistent with the victim's allegations. We also note that Defendant could have filed a motion for a bill of particulars and chose not to do so. Defendant's only argument with regard to prejudice was that he needed to investigate a possible defense outside the timeframe alleged in the original indictment. A change to

the dates of the indictment did not affect Defendant's ability to defend against the charges. On appeal, Defendant has again failed to point to any specific prejudice other than a need to "prepare a new defense." Lastly, the motion to amend was timely made prior to the time jeopardy attached. The trial court did not abuse its discretion. Defendant is not entitled to relief on this issue.

## B. Denial of Continuance

A trial court's denial of a continuance is also reviewed for an abuse of discretion. *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995) (citing *State v. Strouth*, 620 S.W.2d 467, 472 (Tenn. 1981)). An abuse of discretion occurs when the failure to grant a continuance results in the denial of a fair trial or when one could reasonably conclude that a different result would have occurred had the continuance been granted. *Id.* Similar to the amendment of the indictment, we find the trial court did not abuse its discretion in denying a continuance. The amendment of the indictment did not result in Defendant being charged with an additional or different offense. The language of the original indictment charged Defendant with aggravated sexual battery in Count One even if the cover sheet of the indictment listed the offense as sexual battery. Defendant argued that he needed additional time to investigate possible defense outside the timeframe alleged in the original indictment. As we stated above, a change to the dates of the indictment did not affect Defendant's ability to defend against the charges. We cannot conclude that a different result would have occurred if the continuance had been granted. *Id.* The trial court did not abuse its discretion in denying a continuance. Defendant is not entitled to relief on this issue.

## Application of State v. Qualls

Defendant challenges the State's reliance on *State v. Qualls* to support the motion to amend the indictment because the victim's testimony was specific rather than general. As part of that argument, Defendant also challenges the trial court's application of *Qualls* with regard to the election doctrine because the testimony from the victim in this case was very specific with regard to the instances of abuse. Because the victim's testimony was so specific, Defendant argues that *Qualls* should not apply and the State should have been required to elect the offenses on which they desired to proceed. In the alternative, Defendant argues that if this Court determines the testimony from the victim was considered generic, the trial court was required to give the modified unanimity instruction and erred by failing to do so.

In the sex crimes context, the general prohibition of evidence relating to other crimes or bad acts is relaxed, especially where the defendant is alleged to have committed sexual offenses over a lengthy period of time against young children. *Qualls*, 482

- 10 -

S.W.3d at 9 (citing *State v. Johnson*, 53 S.W.3d 628, 631 (Tenn. 2001); *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994); *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993)). Even when the prohibition is relaxed in this context, the admission of other sexual acts is not without its limits. Our supreme court set the boundaries of what evidence of other sexual acts is admissible by saying, "'[W]here the indictment charges that sex crimes occurred over a span of time,' rather than on specific dates, then 'evidence of unlawful sexual contact between the defendant and the victim allegedly occurring during the time charged in the indictment is admissible." *Qualls*, 482 S.W.3d at 9 (quoting *Rickman*, 876 S.W.2d at 828). In order to ensure jury unanimity when the prohibition of evidence relating to other crimes or bad acts is relaxed, the State is required to elect for each count the specific incident on which the jury should deliberate to determine the defendant's guilt. *Id.* Additionally, our supreme court has made clear that the State is not required to elect the specific offense until "the conclusion of the State's case-in-chief." *Id.* at 10.

This Court has provided further clarification regarding the rule set forth in *Rickman*. Prior to the admission of other crimes or bad acts in the sex crimes context, "the State must also show that the young victim can only provide a vague description of events and that the State must take a 'wait and see' approach to the victim's testimony in order for it to show that the defendant committed the offense or offenses alleged in the indictment." *State v. Danny Ray Smith*, No. E2012-02587-CCA-R3-CD, 2014 WL 3940134, at *13 (Tenn. Crim. App. Aug. 13, 2014), *no perm. app. filed.* On the other hand, if the State can pinpoint a specific event that occurred during the time period found in the indictment, and the victim can testify to that specific event, then the *Rickman* exception, or relaxation of the rules, does not apply. *Id.* Furthermore, if the State has narrowed the scope of the indictment by filing a bill of particulars and indicating the specific event that it intends to elect, then the State cannot present evidence of other crimes or bad acts outside of the scope of the bill of particulars. *State v. Jeff Carter*, No. M2009-02399-CCA-R3-CD, 2010 WL 5343212, at *11, (Tenn. Crim. App. Dec. 16, 2010), *no perm. app. filed*.

Generally, the right to a trial by jury guarantees that a verdict rests on the jurors' unanimous conclusion that the defendant committed one particular criminal act. *State v. Kendrick*, 38 S.W.3d 566, 568 (Tenn. 2001). Accordingly, when evidence of multiple instances of unlawful sexual contact is introduced, the State must elect the specific conduct which forms the basis of the conviction. *State v. Knowles*, 470 S.W.3d 416, 423 (Tenn. 2015). The election requirement enables a defendant to prepare for trial, protects against double jeopardy, and allows the trial and appellate court to review the sufficiency of the evidence. *Kendrick*, 38 S.W.3d at 568. The State is not required to identify the particular date that the offense occurred because the time of an offense is immaterial to bringing the indictment and because in cases involving young children, such as the one at bar, the victim may not be able to pinpoint the exact timing of the abuse. *State v. Shelton*,

851 S.W.2d 134, 137 (Tenn. 1993). Instead, the State may elect to identify a particular type of abuse or may base the election on "unique surroundings or circumstances that help to identify an incident." *Id.* at 138. The circumstances might include reference to a meaningful date or event such as a birthday, but "[a]ny description that will identify the prosecuted offense for the jury is sufficient." *Id.* When the victim is only able to give "generic evidence" of a pattern of repeated abuse without differentiating the instances of abuse, the jury should receive a modified unanimity instruction which instructs the jury that it must unanimously agree that the defendant committed all acts described by the victim. *Qualls*, 482 S.W.3d at 17. This approach does not, however, apply "[w]here the prosecution presents non-generic evidence of distinguishable criminal acts." *Id.* at 16.

"The election doctrine refers to the prosecutor's duty in a case where evidence of multiple separate incidents is introduced to elect for each count charged the specific incident on which the jury should deliberate to determine the defendant's guilt." *Qualls*, 482 S.W.3d at 9. The requirement of election ensures that the defendant is able to defend against a particular charge, protects a defendant against multiple prosecutions for the same offense, and enables the appellate court to determine the sufficiency of the evidence. *State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000). However, "[t]he primary purpose for the election requirement is to ensure that the jury is deliberating about a single instance of alleged criminal conduct so that the jury may reach a unanimous verdict." *State v. Smith*, 492 S.W.3d 224, 236 (Tenn. 2016).

Defendant argues that if the evidence presented at trial was "generic," the trial court erred by failing to present a modified unanimity jury instruction required in cases of "'generic' evidence" set forth in *Qualls*. 482 S.W.3d at 2. If the evidence was specific, on the other hand, Defendant argues that the State was required to elect the specific incidents on which each charge was based.

The technical record indicates that the State submitted a written motion containing a list of proposed jury instructions but the technical record does not include a written response to this motion from Defendant. After the matter was submitted to this Court on appeal, we requested supplementation of the record because the transcript included with the technical record did not contain items such as opening arguments, closing arguments, an election of offenses made on behalf of the State and the oral jury instructions. Prior to supplementation of the record, the only discussion with regard to election of offenses in the technical record appears at the hearing on the motion to amend the indictment, where the State informed the trial court that they would elect to submit the massage incident to the jury as a basis Count One, and to use the flashlight incident as the basis for Count Two. After supplementation of the record, the record included a transcript of the oral jury instructions and closing statements, during which the State, consistent with earlier statements, elected to rely on the "massaging incident" for Count One and the "flashlight

incident" for Count Two. While the discussion of jury instructions is brief, it does not appear that Defendant requested a unanimity instruction or objected to the instructions given by the trial court.

Our analysis of this issue is compounded by Defendant's failure to raise this issue in his motion for new trial. Defendant's motion for new trial complains that he was prejudiced by the State's "election" to go forward with dates and offenses for which he had not prepared. This is not a complaint that the State failed to properly make an election at trial. This is a complaint related to the amendment of the indictment. We have already determined that there was no prejudice by the amendment to the indictment, despite the State's last-minute request. In our view, Defendant has waived this issue by failing to raise it in his motion for new trial. Defendant does not request plain error review and we decline to extend it because there was no breach of a clear and unequivocal rule of law. *See State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994).

*Sufficiency*

Defendant argues that the evidence is insufficient to support the convictions under Tennessee Rule of Criminal Procedure 29 and that the verdict is against the weight of the evidence under Tennessee Rule of Criminal Procedure 33(d). Specifically, Defendant complains that "[g]iven the issue referred to previously regarding amendment of the indictment by changing the dates from specific to extremely general and every other issue submitted in this Appellate Brief, [Defendant] respectfully submits that the jury was in error in convicting [Defendant]."

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and

resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

In order to establish the offense of aggravated sexual battery, the State had to prove that there was unlawful sexual contact between Defendant and the victim, who was less than thirteen years of age. T.C.A. § 39-13-504(a)(4). "Sexual contact" means the intentional touching of anyone's intimate parts—or the clothing covering those parts—if the touching can be "reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6). The "primary genital area" is considered an "intimate part." T.C.A. § 39-13-501(2).

Tennessee Rule of Criminal Procedure 29 allows the trial court to "order the entry of judgment of acquittal of one or more offenses charged in the indictment . . . after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." Tenn. R. Crim. P. 29(b). A trial court may reserve ruling on a motion for judgment of acquittal made after the close of all evidence, submit the case to the jury, and decide the motion after the jury has returned a guilty verdict. Tenn. R. Crim. P. 29(d)(2). "At the point the motion is made, the trial court must favor the opponent of the motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence." *State v. James*, 315 S.W.3d 440, 455 (Tenn. 2010). In other words, the standard by which the trial court determines a motion for judgment of acquittal is identical to the standard which applies on appeal in determining the sufficiency of the evidence after a conviction. *Id.* A defendant waives his right to appeal from the trial court's denial of a motion for judgment of acquittal made at the close of the State's case-in-chief if the defendant introduces proof after making the motion. *State v. Collier*, 411 S.W.3d 886, 893 (Tenn. 2013).

Tennessee Rule of Criminal Procedure 33(d) provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." This rule "'imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case,'" and makes "'approval by the trial judge of the jury's verdict as the thirteenth juror . . . a necessary prerequisite to imposition of a valid judgment.'" *State v. Biggs*, 218 S.W.3d 643, 653 (Tenn. Crim. App. 2006) (quoting *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995)). "'[T]he trial court must weigh the evidence and grant a new trial if the evidence preponderates against the

weight of the verdict.'" *Id*. (quoting *State v. Blanton*, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996)).

The difference between Rule 29 and Rule 33 is that the former is concerned with the sufficiency of the evidence and the latter with the weight of the evidence. Our supreme court has explained the difference as follows:

> "In evaluating the legal sufficiency of the evidence, the judge determines whether all the necessary elements of the offense have been made out, whether the defendant's identity has been established and whether the proof demonstrates the existence of a valid defense. In doing so, the court is required to view the evidence in the light most favorable to the verdict, giving the prosecution the benefit of all inferences reasonably to be drawn from the evidence. . . .

> An inquiry into the weight of the evidence is entirely different. The trial judge does not have to view the evidence in the light most favorable to the prosecution; he may weigh the evidence himself as if he were a juror and determine for himself the credibility of the witnesses and the preponderance of the evidence."

*State v. Ellis*, 453 S.W.3d 889, 899 (Tenn. 2015) (quoting *State v. Johnson*, 692 S.W.2d 412, 415 (Tenn. 1985) (Drowota, J., dissenting)). Because "[a]ppellate courts are ill-suited . . . to assess whether the verdict is supported by the weight and credibility of the evidence . . . , the accuracy of a trial court's thirteenth juror determination is not a subject of appellate review." *State v. Moats*, 906 S.W.2d 431, 435 (Tenn. 1995). Although the duty is mandatory, the trial court is not required to make an explicit statement on the record that has fulfilled its duty to act as thirteenth juror, and appellate courts may presume that the trial court has approved the verdict when it overrules a motion for new trial without comment. *Biggs*, 218 S.W.3d at 653 (citing *Carter*, 896 S.W.2d at 122; *State v. Brown*, 53 S.W.3d 264, 274 (Tenn. Crim. App. 2000)). "[O]nly when the record contains statements indicating that the trial court failed to act as the thirteenth juror or misconstrued its authority under that rule" may an appellate court grant a new trial. *Moats*, 906 S.W.2d at 435.

The record is not clear if Defendant actually made a motion pursuant to Rule 29. To the extent Defendant moved for a judgment of acquittal at trial, this issue is waived on appeal because Defendant chose to introduce proof after the close of the State's proof. Moreover, the supplemental record includes the announcement of the jury verdict.

- 15 -

Immediately after the verdict, the trial court commented that it "agree[d] with the jury and approve[d] the jury's verdict as the [thirteenth] juror." Additionally, at the hearing on the motion for new trial, the trial court expressed its satisfaction with the weight of the evidence and its agreement with the jury verdict. Calling the testimony of the victim, "very compelling" and the jury's determination that Defendant was "not truthful," the trial court again affirmed the verdict. Therefore, the trial court fulfilled its duty as thirteenth juror.

We conclude that the evidence is sufficient to support Defendant's convictions for aggravated sexual battery. The victim testified that Defendant rubbed her "private area" during an incident that occurred a few weeks prior to her forensic interview in 2012 when she was twelve years of age. This incident started with Defendant massaging her feet and slowing moving his hands up her legs until his hands reached her private area. The victim also testified to an incident that occurred in 2009 or 2010 when she was ten years old during which Defendant told her he needed to check her "down there" with a flashlight. The victim recalled pulling down her pants and underwear before putting a pillow over her face as Defendant used his hands to "spread" her "private area" apart. The victim's testimony alone is sufficient to support Defendant's conviction. *See State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003) (stating that a child victim's testimony regarding sexual contact can be sufficient to support a conviction); *State v. Shropshire*, 45 S.W.3d 64, 70 (Tenn. 2000) (holding that the evidence was sufficient for a conviction of aggravated sexual battery where the victim testified that she was under thirteen years old and the defendant forced her to touch his penis). Even though Defendant's testimony conflicted with the testimony of the victim, we do not entertain questions concerning the credibility of a witness because those are matters entrusted to the jury. *Wagner*, 382 S.W.3d at 297. Therefore, Defendant is not entitled to relief.

*Sentencing*

Defendant argues that the trial court improperly sentenced Defendant to an excessive sentence of twenty years. Specifically, Defendant argues that the trial court improperly relied upon his criminal history to determine the length of his sentence and that the trial court improperly found that Defendant digitally penetrated the victim and used that fact to determine the length of the sentences and impose consecutive sentencing. The State counters that Defendant has failed to overcome the presumption that his sentence is reasonable.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This

presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A § 40-35-102, -103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4). The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). This Court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709.

In sentencing Defendant for two counts of aggravated sexual battery, the trial court determined that Defendant was a Range I, standard offender convicted of two Class B felonies. As such, Defendant was subject to a sentence of eight to twelve years for each conviction. T.C.A. § 40-35-112(a)(2); 39-13-504(b). Before sentencing Defendant to ten years on each count, the trial court applied four enhancement factors and one mitigating factor. The trial court determined that Defendant abused a position of private trust, inflicted great emotional distress on the victim and her family, committed the crimes to gratify his desire for pleasure or excitement, and had a previous history of criminal convictions or criminal behavior. T.C.A. § 40-35-114(1), (7), (14), (15). Defendant insists that the trial court improperly determined that Defendant was "digitally penetrating" the victim and that this coupled with other instances of abuse was criminal behavior to support the application of the enhancement factor. Even if the trial court

- 17 -

improperly applied this one enhancement factor, the trial court used other enhancement factors to enhance Defendant's sentence. Defendant's sentence is within the range of punishment for his conviction. He is not entitled to relief on this issue.

*Consecutive Sentencing*

In *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013), the Tennessee Supreme Court expanded its holding in *Bise* to also apply to decisions by trial courts regarding consecutive sentencing. *Id.* at 859. This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id.* at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)). One of these factors is if the defendant is an offender whose record of criminal activity is extensive or that the defendant is convicted of two or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim. T.C.A. § 40-35-115(b)(2), (5).

As relevant to this case, the trial court found that there was "credible testimony" from the victim that there was additional extensive criminal activity that went uncharged in the indictment. The trial court also noted that Defendant was convicted of two offenses involving the sexual abuse of a minor, that he was the minor's stepfather, that the abuse lasted for about two years, that the sexual acts were varied, and that there was lasting mental damage to the victim as a result of the abuse. The trial court did not abuse its discretion by ordering consecutive sentencing. Defendant is not entitled to relief on this issue.

*Jury Instructions*

Finally, though not raised by either party on appeal, our review of the entire record in this case necessarily included a review of the jury instructions. In the technical record initially provided to this Court on appeal, we received a written copy of the jury charge but did not receive a transcript of the oral charge to the jury. The written charge began with the following:

The Defendant, Lynn Frank Bristol, is charged in Count 1 of the indictment with the crime of Aggravated Sexual Battery. The offense of

Aggravated Sexual Battery necessarily includes the lesser offenses of Attempted Aggravated Sexual Battery; Sexual Battery; Attempted Sexual Battery; Child Abuse; and, Assault.

Defendant is charged in Count 2 of the Indictment with the crime of Rape Of a Child. The offense of Rape Of a Child necessarily includes the lesser offense of Attempted Rape Of a Child; Aggravated Sexual Battery; Attempted Aggravated Sexual Battery; Sexual Battery; Attempted Sexual Battery; Child Abuse; and, Assault.

The Defendant pleads not guilty *to each and every offense embraced in the indictment.*

(Emphasis added).

Next, the written charge included pattern jury instructions for the offenses of aggravated sexual battery and sexual battery. These were followed by written instructions on presumption of innocence; reasonable doubt; expert witness testimony;[4] burden of proof: elements and date of offense; burden of proof: venue (general); deliberation: order of consideration; credibility of witnesses: general and defendant testifying; multiple counts: finding on each required; direct and circumstantial evidence; witnesses; evidence of other crimes; when identification not material; impeachment of witness; confession (admission against interest); inferences; use of juror notes; no outside communication during deliberation; no sympathy or prejudice by jury; jury: deliberation – deadlocked jury charge; and selecting foreperson. Noticeably absent are written instructions for the indicted offense of rape of a child and the lesser-included offenses of attempted aggravated sexual battery, attempted rape of a child, attempted sexual battery, child abuse, or assault. Also absent were definitions for intentionally, knowing, recklessly and all definitions that define sexual contact, including penetration and intimate parts. Because of these noticeably absent instructions, we requested supplementation of the record with the transcript from the oral jury instructions to compare the two.

Upon receipt and review of the transcript of the oral jury charge, it appears the oral jury charge and the written jury charge are vastly different and do not track one another. The oral charge given by the trial court, according to the trial transcript, does charge the jury on what must be proven by the State to establish rape of a child, attempted rape of a child, aggravated sexual battery, attempted aggravated sexual battery, sexual battery,

---

[4] This instruction actually appears twice within the written charge.

attempted sexual battery, child abuse, and assault. In other words, all of the offenses appearing on the first page of the written charge. Furthermore, the oral charge includes a substantial number of required instructions that are delineated by Tennessee Pattern Jury Criminal Instructions (T.P.I.- Crim.) which do not appear in the written charge.

Because Defendant did not object to the charge at trial, and the issue was not raised by Defendant in a motion for new trial or on appeal, this Court is limited to reviewing the issue for plain error. *See* Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."); *Faulkner*, 154 S.W.3d at 58. An appellate court can sua sponte invoke plain error relief but this right should be exercised sparingly "because 'appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbitrators of legal questions presented and argued by the parties before them.'" *State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014) (quoting *State v. Northern*, 262 S.W.3d 741, 766 (Tenn. 2008) (Holder, J., concurring and dissenting)). While uncommon, issues not raised in the trial court may be reviewed in the discretion of the appellate court for plain error when these five factors are established: (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the defendant did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice. *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016); *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000).

Here, the record, as supplemented, clearly establishes what occurred in the trial court. The technical record, after supplementation, included both the written jury instructions and the trial court's recitation of the jury instructions prior to the jury beginning its deliberations. The record before this Court does not contain any evidence that the trial court submitted a written definition of rape of a child, attempted rape of a child, attempted aggravated sexual battery, attempted sexual battery, sexual battery, child abuse, or neglect, and many critical sexual definitions, the record is clear that these instructions were only provided to the jury orally. The trial court's failure to give the jury complete written instructions breached a clear an unequivocal rule of law. Rule 30(c) of the Tennessee Rules of Criminal Procedure provides,

> In the trial of all felonies--except where pleas of guilty have been entered-- every word of the judge's instructions *shall* be reduced to writing before being given to the jury. The written charge shall be read to the jury and taken to the jury room by the jury when it retires to deliberate. The jury shall have possession of the written charge during its deliberations. After the jury's deliberations have concluded, the written charge shall be returned

to the judge and filed with the record, but it need not be copied in the minutes.

(Emphasis added). The word "shall" is generally construed as being mandatory rather than discretionary. *See State v. Haddon*, 109 S.W.3d 382, 386 (Tenn. Crim. App. 2002) (citing *Stubbs v. State*, 393 S.W.2d 150 (Tenn. 1965)). The Tennessee Supreme Court has long held that the requirement that "every word of the judge's instructions shall be reduced to writing" is mandatory. *See State v. Gorman*, 628 S.W.2d 739, 740 (Tenn. 1982) (citing *McElhaney v. State*, 420 S.W.2d 643, 645 (Tenn. 1967)). Thus, Rule 30(c)'s requirements that the jury charge be both provided in writing and read aloud to the jury are clear and unequivocal.

Moreover, the trial court's failure to include all of the written definitions to the jury prior to deliberation adversely affected a substantial right of Defendant. Defendants in criminal cases have a constitutional right to trial by jury, which includes the "right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). Thus, trial courts have a duty "to instruct the jury on the general principles of law applicable to the facts of the case." *State v. Clark*, 452 S.W.3d 268, 294-95 (Tenn. 2014) (citations omitted). "This right encompasses the right to have the jury instructed on all lesser-included offenses supported by the evidence." *State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006). The written jury charge in this case was incomplete. It did not contain instructions for the indicted offense of rape of a child or several of the lesser-included offenses and definitions.

There is no evidence in the record that Defendant waived the issue for tactical purposes. The oral instruction indicates that the jury *was* given the instructions on the indicted offenses as well as all the lesser-included offenses. Although not in the oral instructions, the written instructions state that "the Defendant pleads not guilty to each and every offense embraced in the indictment." However, many of the offenses embraced in the indictment were not included in the written instructions. At no place in the record is there any indication that Defendant, for any reason, did not want all the oral instructions included in the written instructions. In fact, when asked by the trial court at the conclusion of the oral instructions if he accepted the oral instructions or had any objection, counsel for Defendant stated he accepted the oral instructions.

Finally, we must determine whether consideration of the error is necessary to do substantial justice. This Court faced a similar issue albeit with regard to a supplemental written instruction that was added by the trial court in *State v. Dylan Brewer*, No. W2017-01725-CCA-R3-CD, 2019 WL 1109917, at *4 (Tenn. Crim. App. Mar. 11, 2019), *no perm. app. filed*. In *Dylan Brewer*, this Court determined that the trial court

erred by failing to orally instruct the jury as to the definitions of intentionally and knowingly even though the written charge submitted to the jury included the definitions because Rule 30 requires jury instructions to be provided to the jury both orally and in writing. *Id.* at *7-8. While recognizing that failure to properly instruct the jury on a material element of an offense is a non-structural constitutional error subject to harmless error review, in *Dylan Brewer* we determined that the error was not harmless because the charge "failed to fairly submit the legal issues to the jury" especially in a case where the proof was largely circumstantial. *Id.* Like *Dylan Brewer*, we cannot conclude beyond a reasonable doubt that the trial court's failure to submit the written charge to the jury on an indicted offense as well as several lesser-included offenses, and critical definitions, is harmless. The rule states that the "every word of the judge's instructions shall be reduced to writing before being given to the jury." Tenn. R. Crim. P. 30(c). Based on the supplemented record before this Court, that clearly did not happen in this case. Moreover, a jury instruction is prejudicial error if it "'fails to fairly submit the legal issue or if it misleads the jury as to the applicable law.'" *State v. Guy*, 165 S.W.3d 651, 659 (Tenn. Crim. App. May 11, 2004) (quoting *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997)). All of the elements of each offense must be described and defined in connection with that offense. *State v. Cravens*, 764 S.W.2d 754, 756 (Tenn. 1989.

Consequently, we conclude that all of the required factors for plain error relief have been met. Therefore, we must reverse the judgment of the trial court and remand the case for a new trial before a properly instructed jury. Furthermore, based upon principles of double jeopardy, because page 4 of the signed verdict form indicates the jury found Defendant not guilty of the offense of rape of a child, as charged in Count Two of the indictment, the State must now proceed with the next lesser-included offense of aggravated sexual battery, for Count Two. *State. v. Rush*, 50 S.W.3d 424 (Tenn. 2001) (citing *State. v. Maupin*, 859 S.W.2d 313 (Tenn. 1993)).

*Conclusion*

For the foregoing reasons, the judgments of the trial court are reversed. The matter is remanded to the trial court for further proceedings.

_____
TIMOTHY L. EASTER, JUDGE